Saina S. Shamilov
Bryan A. Kohm
Jonathan T. McMichael
Martyna M. Skrodzka
Eric Menist
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500

Justin T. Quinn
**ROBINSON MILLER LLC**
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Telephone:  973.690.5400

*Attorneys for Plaintiff*
*Lashify, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LASHIFY, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>KISS NAIL PRODUCTS, INC.,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lashify, Inc. ("Lashify") hereby files this Complaint against KISS Nail Products, Inc. ("KISS"), and alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is an action to stop KISS from willfully and unlawfully making, using, selling, offering for sale, marketing, and importing artificial eyelash extension systems and components, including the KISS Falscara line of products ("the

Accused Products"), designed by copying Lashify's revolutionary, award-winning, and patented eyelash extension system.

2.     KISS ignored Lashify's requests to cease and desist its unlawful proliferation of copycat products designed to reap the benefits of Lashify's intellectual property, goodwill, know-how, and ingenuity, all without seeking any permission from Lashify to do so.   Instead, KISS has blatantly copied the innovations of Lashify, so it can profit from the tireless work and ingenuity of Ms. Sahara Lotti, Lashify's founder and the inventor of numerous patents.

3.     KISS's products infringe Lashify's patents, including U.S. Patent No. 10,660,388 ("the '388 patent") and U.S. Patent No. 10,721,984 ("the '984 patent") (collectively, the "Patents-In-Suit").  Lashify thus files this lawsuit not only to protect its own innovations, but also to protect further innovation in the beauty industry—innovation that otherwise would fall victim to the unfair and unlawful conduct of companies like KISS.

## THE PARTIES

4.     Plaintiff Lashify is a corporation organized under the laws of Delaware, having a place of business at 63 Greene St., #5A, New York, New York 10012.

5.     Upon information and belief, Defendant KISS Nail Products, Inc. is a New York corporation having a place of business at 25 Harbor Park Drive, Port Washington, New York 11050.  Upon information and belief, KISS Nail Products,

Inc. also does business under the name KISS Products, Inc., including for purposes of marketing and selling the Accused Products.  KISS offers for sale and sells products all throughout the United States, including New Jersey.

## JURISDICTION AND VENUE

6.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

7.     This Court has personal jurisdiction over KISS because KISS has engaged in business activities in and directed to this judicial district; has imported, offered for sale, sold, and/or advertised the Accused Products in this district; has committed the acts complained of herein in this judicial district that led to foreseeable harm and injury to Lashify; and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of New Jersey.  Upon information and belief, KISS owns, maintains, and operates an approximately 470,000 square foot logistics and distribution center located within the State of New Jersey at the address of KISS Distribution Center, 600 Ridge Road, Piscataway, New Jersey 08854.  Upon information and belief, KISS has sold, processed, and shipped the Accused Products from its New Jersey distribution center and employs approximately 250 employees there.  Upon information and belief, KISS imports Accused Products from overseas into the State of New Jersey through the Newark/Elizabeth

seaport to its New Jersey distribution center.

8.     Venue is proper in this judicial district over KISS pursuant to 28 U.S.C. § 1400(b), because KISS has committed acts of infringement and has a regular and established place of business in this judicial district.  KISS owns, maintains, and operates the distribution center in this judicial district, and has sold, processed, and shipped the Accused Products from its distribution center.  KISS has targeted sales to New Jersey residents at least by operating a fully interactive and commercial website, www.kissusa.com, offering for sale and selling the Accused Products to residents of the State of New Jersey.  KISS is committing tortious acts in the State of New Jersey, is engaging in interstate commerce, and has wrongfully caused Lashify substantial injury in the State of New Jersey.

## LASHIFY'S INNOVATIVE LASH EXTENSION SYSTEM

9.     Lashify is a California start-up founded by Ms. Sahara Lotti who invented "the most natural-looking false lash system you've ever seen."  (*See* https://www.instyle.com/beauty/lashify-false-eyelash-system.)  The Lashify system is a revolutionary award-winning do it yourself ("DIY") luxury lash extension system that creates salon quality lash extensions in record time and in the comfort of one's home.  The system is easy to use and, unlike salon extensions, is damage-free to natural lashes; it creates infinite possibilities for all eye shapes in minutes.  As a result, the Lashify system has been recognized, used, and touted by Oscar-winning

4

celebrities, world-renowned beauticians, popular magazines, online publications, and its many users.

10.     Indeed, the Lashify system has been used by over one hundred thousand customers.  Renée Zellweger, Reese Witherspoon, Nicole Kidman, Lupita Nyong'o, Kristen Bell, Kourtney Kardashian, Claire Danes, Melissa McCarthy, Janelle Monáe, Cynthia Nixon, Jessica Simpson, Maggie Gyllenhaal, Tracie Ellis Ross, Salma Hayek, Awkwafina, Liv Tyler, and Lena Dunham are just a few of the artists and influential figures who have used the Lashify system.  The Lashify system "walked" the red carpets at the Golden Globes, Grammys, Emmys, Met Gala, and other globally followed events.  The Lashify system has been used by influential makeup-artists Ariel Tejada, Jessica Smalls, Nick Barose, Anton Khachaturian, Matthew Van Leeuwen, Kirin Bhatty, and many more.  It has been featured in publications such as InStyle, Elle, Glamour, Vogue, Allure, The Knot, Shape, and many others.  And it has received numerous industry awards, including 2019 Glamour Beauty Award Winner, The Knot Beauty Awards 2019 Winner, and 2019 Shape Editor Pick.  Thus, unsurprisingly, customers of the Lashify system call it "the best invention since sliced bread," a "game changer," and "[t]he lash system you didn't know you needed."  (*See* www.lashify.com.)

11.     Individual lash extensions done at salons are time-consuming, and attach to a single lash with glue.  Due to the ingredients of the glue and excess fiber

weight, traditional lash extensions can be damaging.  They can pull on natural lash roots, causing damage and lash loss.  This time-consuming, costly process needs to be repeated every three weeks to maintain the desired results.

12.    DIY artificial lashes did exist before the Lashify system, and still do. One option is strip lashes, a band of lashes designed to be applied with a removable adhesive over a natural top lash line.  These weigh heavily on the natural lashes, appear "faux," and are not comfortable to be worn for long periods of time.  Another option are cluster lashes that are sections of a strip lash or groups of individual lashes designed to be applied with a hard glue, making them similarly heavy to the eyes, difficult to apply, and damaging if worn for extended periods of time or slept with.

13.    Ms. Lotti, a frequent wearer of salon lash extensions, uninspired and frustrated by the lack of options in the lash industry and recognizing the need for innovation in the industry, set out to design a product that would meet her high standards.  Ms. Lotti, herself a relentless innovator, put aside her career to fully devote herself to a new enterprise and passion.  She created a lash lab in her living room; immersed herself in extensive studies of the human eyelid, the shape of lash lines, and various chemical compositions; and tested on her own lashes various prototypes and potential new product options.  After years of working tirelessly toward her goal, she had created the Gossamer® lash:  the lightest, flattest, and most natural-looking lash that merges with natural lashes like a coat of mascara—all without the

skill of a lash artist or the time-consuming and damaging process offered by the salons.  Ms. Lotti's research and development efforts also resulted in her discovery of Lashify's unique, hypoallergenic chemical compositions that are safe even for sensitive eyes.  She invented the four components of the Lashify system in Lashify's Control Kit™: (1) the Gossamer® lashes in sterile lash cartridges, (2) the Fuse Control® Wand for applying the lashes, (3) the Whisper Light™ Flexible Bond, and (4) the Glass lash extender that seals the lashes in the event of tackiness.  Each is innovative and, in combination, is a revolution that changed the lash industry.

14.    Today, as a result of Ms. Lotti's hard work and ingenuity, Lashify is recognized as a market leader in the design of revolutionary lash extension products. A testament to its innovation and the strength of its brand is Lashify's extensive worldwide intellectual property portfolio, including United States and foreign patents, federally registered trademarks, and many pending patent and trademark applications.

15.    The Lashify Control Kit™ includes two sets of Gossamer® lashes (12mm and 14mm) set in Lashify's innovative cartridge, a patented wand for fusing the lashes underneath the natural lash line, a bond, a sealer, and a luxury case:



16.    Gossamer® lashes are made of polybutylene terephthalate ("PBT") fibers—the best quality silk in the world sourced from Korea—heated to form delicate artificial lash sections, which upon application seamlessly blend with the natural  lashes.  The Gossamer® lashes are designed to fit underneath the natural lashes, come in a variety of lengths, fluffiness, and curvatures and thus can be applied in virtually unlimited positions and arrangements.  Indeed, users devise "maps" specifying locations of different types of Gossamer® lashes along one's natural lash line to achieve looks ranging from natural to glamorous to dramatic, and even colored.  The revolutionary flat base invented by Ms. Lotti gives users the ability to stack for volume.

17.    The Fuse Control® Wand is used to apply the Gossamer® lashes underneath the natural lashes.  It has a pleasing fluid design and comes in a variety of colors.  It is used to fuse the Gossamer® lashes to the natural lash line for a stable

8

and proper placement for up to 10 days.



18.     The Whisper Light™ Sided Mix Tip bond is a flexible, hypoallergenic adhesive designed exclusively to hold Gossamer® lashes.  Its Biotin and Micro-flex technology creates a flexible and nourishing cushion underneath the lash line, protecting the roots and ensuring damage-free wear.

19.     The Glass is a unique waterproof lash extender.  Its application is the last step in Lashify's unique system.  It finishes the Lashify look, sealing and extending the wear of the Gossamer® lashes.

### KISS'S COPYING OF LASHIFY'S SYSTEM AND USE OF LASHIFY'S INTELLECTUAL PROPERTY

20.     Unsurprisingly, albeit unfortunately, Lashify's innovative system attracted not just a loyal customer base, but also copycats seeking to profit from the fruits of Ms. Lotti's hard work and dedication.  One of them is KISS, who blatantly copied the revolutionary Lashify system while proclaiming it to be its own, and dubbing it "the new way to lash" despite knowing that Lashify developed its system years before.

21.     KISS, one of the world's largest artificial strip lashes and nails companies, launched its new product "Falscara" in January of 2020, and willfully copied Lashify's technology without license, permission, or authorization to create its knock-off product.

22.     KISS's copying of Lashify's system is nearly exact.  Indeed, the products are nearly identical.

23.     Lashify offers its system as a starter kit with a set of lashes, applicator, bond, and sealer.  So does KISS:  KISS's Falscara set similarly includes a set of lashes, applicator, bond, and seal.  Just like Lashify, KISS also sells the components of its kit individually, including its lashes, applicator, and bonding agent.

| Lashify Gossamer® Lashes | KISS Falscara Lashes |
| --- | --- |
|  |  |

| Lashify Gossamer® Lash Cartridge | KISS Falscara Cartridge |
|---|---|
|  | |
| **Lashify Fuse Control® Wand** | **KISS Falscara Applicator** |
| **Lashify Whisper Light™ Dual Sided Bond with Micro Mascara Tip** | **KISS Falscara Eyelash Bond & Seal** |

24.     Just like Lashify, KISS offers 3 styles of lashes to be placed under a natural lash line, which are designed to provide the same looks and, on information and belief, are made of similar fibers using similar technology.  Lashify calls its lash styles Amplify™, Bold®, and Curl™.  KISS named its corresponding styles with mere synonyms:  Lengthening, Volumizing, and Lifting.

25.     Many have recognized the striking similarity that KISS's products bear to Lashify's innovative system.  Beauty writers, influencers, and customers refer to KISS's copycat Falscara as a "dupe" of Lashify's system.  For example, Instagram user Ivyykins, referring to Falscara, commented that "This idea is the exact same."  Another customer similarly recognized Falscara as "a total knockoff!!" of the Lashify system.  Countless others have noticed and publicly recognized that Falscara is a mere "dupe" of Lashify.

www.influenster.com › ... › Kiss False Eyelashes ▾

KISS Falscara Eyelash Starter Kit 01 Reviews 2020 - Influenster

KISS Falscara Eyelash Starter Kit 01 uploaded by OLGA T. ... At $18, this is meant to be an affordable, drugstore dupe for Lashify (lash extensions that last for a ...

★★★★★ Rating: 4.3 - 569 reviews

(Source: https://www.influenster.com/reviews/kiss-falscara-eyelash-starter-kit-01.)



(Source: https://www.youtube.com/watch?v=RpHMeEFX62c.)



(Source: https://www.youtube.com/watch?v=FdDeTw6Bsb4.)



(Source: https://www.youtube.com/watch?v=SHV8KF0v3aM.)



(Source:   https://supergreat.reviews/articles/2020-6-30-dupe-lashify-false-lash-extensions-system.)

26.   Indeed, upon information and belief, the similarity of the products was KISS's intent.  KISS set as its goal to copy Lashify's products and design, unlawfully taking advantage of Lashify's innovation in the industry.

27.   For example, in 2019, KISS employees Youlmae Lee and Heidi Kempa ordered Lashify products for shipment directly to KISS's headquarters in Port Washington, New York.  Upon information and belief, Ms. Lee was a product manager at KISS, whose responsibilities entailed helping to develop new products; and Ms. Kempa was an assistant manager in KISS's global marketing department.

28.   Upon information and belief, KISS also approached a factory that manufactures Lashify's products with an intent to learn information about Lashify's products.  Upon information and belief, KISS also intentionally copied the look and

feel of Lashify's products, including Lashify's design, packaging, and presentation, seeking to ride Lashify's coattails.

29.   KISS has also copied Lashify's patented process for applying Lashify's artificial eyelash extensions.  KISS provides nearly identical instructions with the Accused Products that instruct a user to follow exactly every step in Lashify's patented process.

30.   Remarkably, with full knowledge that Lashify's system was introduced to the market first, and while actively attempting to copy it, KISS decided to tout its Falscara product as "A New Way to Lash"—a statement that is demonstrably false.

31.   KISS decided not to change its course even after Lashify requested that KISS stop making and offering products that infringe Lashify's intellectual property. Lashify first contacted KISS on August 1, 2019.  In a letter to Frank Russo, the Global Marketing Director of KISS, Lashify requested that KISS immediately "cease and desist" from "copying Lashify's inventions" and "contacting any of Lashify's suppliers, distributors, or other business partners."  Lashify's letter identified specific patent applications owned by Lashify, including U.S. Patent Application No. 15/968,361, which issued as the '388 patent asserted herein.  David Cho, KISS's Senior Director and Legal Counsel, responded on August 15, 2019, promising to review Lashify's letter and "revert . . . soon."  He never did.  Nor did KISS.

KISS has never substantively responded to Lashify's letter of August 1, 2019, instead continuing its development, advertising, marketing, and sales of its copycat product. KISS simply ignored Lashify's correspondence and its request that KISS stop copying Lashify's intellectual property.

32.    On February 28, 2020, Lashify sent another letter to KISS, again requesting that KISS stop selling and offering for sale Falscara—an unauthorized copycat product of the Lashify system. KISS never substantively responded to Lashify's copying allegations. It again ignored them and continued with advertising, marketing, and selling its dupe product.

33.    Upon information and belief, KISS undertook all of this conduct—ultimately plucking the finished product from Lashify after Ms. Lotti had dedicated substantial resources and years of her life to its development—with full knowledge that it was not the rightful inventor or owner of the technology. Indeed, KISS's refusal to cease and desist from further use of Lashify's technology and innovations, despite multiple requests that it do so, reflects its lack of respect for intellectual property rights and its intent to profit from the innovations and ingenuity of others. Neither Lashify nor Ms. Lotti, however, will be dissuaded from innovating and introducing revolutionary beauty products by companies such as KISS looking to take advantage of smaller businesses or vulnerable entrepreneurs.

## FIRST CAUSE OF ACTION
### (Infringement of United States Patent No. 10,660,388)

34.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

35.    On May 26, 2020, the '388 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '388 patent, including the rights to exclude others and to sue and recover damages for infringement.

36.    A true and correct copy of the '388 patent is attached as **Exhibit A**.

37.    KISS was on actual notice of the '388 patent before the filing of this Complaint.  Lashify sent correspondence putting KISS on notice of the patent application that ultimately issued as the '388 patent.  Prior to the filing of this Complaint, Lashify also sent correspondence putting KISS on notice of the '388 patent as issued, as well as KISS's infringement thereof.

38.    KISS has infringed and continues to infringe at least claim 1 of the '388 patent, directly, contributorily, and/or by inducement, by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '388 patent.

39.    Use of KISS's Accused Products according to their intended purpose meets each and every limitation of at least claim 1 of the '388 patent, either literally

or under the doctrine of equivalents.  For example, the Accused Products include a set of heat-fused lash extensions designed to be applied to an underside of the user's natural lashes in the manner set forth in the '388 patent.  An exemplary claim chart setting forth the way in which KISS infringes at least claim 1 of the '388 patent is attached as **Exhibit B**.

40.     KISS also infringes the '388 patent indirectly by inducing others to infringe and contributing to the infringement of others, such as its customers and end users.  For example, KISS knowingly advertises, sells, and instructs how to use the Accused Products in an infringing manner, including on the Accused Products themselves and KISS's website.  (*See* Exhibit B.)  On information and belief, KISS advertises, sells, and instructs how to use the Accused Products with specific intent to cause infringement or with willful blindness to the resulting infringement.  KISS also contributorily infringes the '388 patent by selling or offering to sell infringing products, such as the Accused Products, knowing them to be especially made or especially adapted for practicing the claimed invention of the '388 patent and not a staple article or commodity of commerce with substantial non-infringing uses.  For example, as discussed above, KISS advertises, sells, and instructs how to use the Accused Products, including on the Accused Products themselves and KISS's website, in ways that emphasize the use of such products to perform the claimed methods of the '388 patent.  Upon information and belief, the only way in which to use the

Accused Products according to KISS's advertisements and instructions, and to achieve the benefits stated therein, is to infringe the '388 patent.  (*See* Exhibit B.) KISS's advertising and instructions therefore demonstrate that the Accused Products have no substantial non-infringing uses, and that they are specifically intended for practicing the '388 patent.

41.    KISS engaged in such actions with actual knowledge of the '388 patent and that its actions would cause direct infringement, or alternatively was willfully blind to these facts.  Upon information and belief, KISS had knowledge that its Accused Products are especially made or especially adapted for use in infringement of the '388 patent.  Indeed, upon information and belief, KISS copied Lashify's patented system and methods in developing and offering for sale its own infringing products, including the Accused Products.  Lashify also contacted KISS multiple times prior to filing this Complaint, asking that KISS immediately "cease and desist" from using Lashify's technology and innovations.  KISS has refused to do so.  KISS has had actual knowledge of the '388 patent and knowledge that its acts were inducing and contributing to infringement of the '388 patent since before the filing of this Complaint.

42.    KISS's acts of infringement of the '388 patent were and are undertaken without authority, permission, or license from Lashify.  KISS's infringing activities therefore violate 35 U.S.C. § 271.

43.     As a direct and proximate consequence of KISS's infringement of the '388 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless KISS is enjoined from infringing the '388 patent.

44.     KISS's infringement of the '388 patent is willful, as KISS knew of the '388 patent and did nothing to stop its blatant use and pirating of Lashify's intellectual property.

### SECOND CAUSE OF ACTION
### (Infringement of United States Patent No. 10,721,984)

45.     Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

46.     On July 28, 2020, the '984 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '984 patent, including the rights to exclude others and to sue and recover damages for infringement.

47.     A true and correct copy of the '984 patent is attached as **Exhibit C**.

48.     KISS was on actual notice of the '984 patent before the filing of this Complaint.  Prior to the filing of this Complaint, Lashify sent correspondence putting KISS on notice of the '984 patent as issued, as well as KISS's infringement thereof.

49.     KISS has infringed and continues to infringe at least claim 1 of the '984

patent, directly, contributorily, and/or by inducement, by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '984 patent.

50.     KISS's Accused Products infringe the '984 patent, either literally or under the doctrine of equivalents.  For example, the Accused Products include a set of heat-fused lash extensions as claimed in the '984 patent.  An exemplary claim chart setting forth the way in which KISS infringes at least claim 1 of the '984 patent is attached as **Exhibit D**.

51.     KISS's acts of infringement of the '984 patent were and are undertaken without authority, permission, or license from Lashify.  KISS's infringing activities therefore violate 35 U.S.C. § 271.

52.     As a direct and proximate consequence of KISS's infringement of the '984 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless KISS is enjoined from infringing the '984 patent.

53.     KISS's infringement of the '984 patent is willful, as KISS knew of the '984 patent and did nothing to stop its blatant use and pirating of Lashify's intellectual property.

## **PRAYER FOR RELIEF**

WHEREFORE, Lashify prays for the following relief:

1)      A judgment that KISS's acts constitute patent infringement under the causes of action asserted in this Complaint;

2)      A judgment permanently enjoining and restraining KISS, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with KISS, from:

   a) infringing any claim of the Patents-in-Suit; and

   b) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

3)  A judgment requiring KISS to, at KISS's expense, withdraw from the market, account for, and properly destroy any and all products infringing the Patents-in-Suit;

4)  A judgment requiring that KISS pay Lashify all of its damages caused by KISS's unlawful acts, including under 35 U.S.C. § 284, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing acts;

5) A judgment awarding Lashify its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285;

6) A judgment that KISS's infringement has been willful, and ordering KISS to pay treble damages as provided by law; and

7) Such other relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Lashify hereby demands a jury trial as to all issues so triable.

Dated:  August 5, 2020  Respectfully submitted,

By: /s/*Justin T. Quinn*
      Justin T. Quinn
      ROBINSON MILLER LLC
      Ironside Newark
      110 Edison Place, Suite 302
      Newark, NJ 07102
      Telephone:  973.690.5400

      Saina S. Shamilov *
      FENWICK & WEST LLP
      Silicon Valley Center
      801 California Street
      Mountain View, CA  94041
      Telephone:      650.988.8500

      Bryan A. Kohm *
      Martyna M. Skrodzka *
      FENWICK & WEST LLP
      555 California Street, 12th Floor
      San Francisco, CA 94104
      Telephone:      415.875.2300

      Jonathan T. McMichael *
      FENWICK & WEST LLP
      1191 Second Avenue, 10th Floor
      Seattle, WA 98101
      Telephone:      206.389.4510

      Eric Menist *
      FENWICK & WEST LLP
      902 Broadway, Ste. 14
      New York, NY 10010
      Telephone:      212.430.2600

      * *pro hac vice* forthcoming

      *Attorneys for Plaintiff Lashify, Inc.*